WILEY JOHNSON, Respondent, *vs.* JOHN HOFFMAN, Appellant.

1. *Landlord and tenant—Croppers on shares—Agreements.*—Where by agreement A. is to cultivate the land of B., and B. is to receive an agreed proportion of the crops, it is a question only determinable by the agreement in each case, whether the relation of landlord and tenant exists, or the parties are croppers on shares.

2. *Forcible entry and detainer—Landlord and tenant—Crops—Tenants in common.*—By written agreement A. leased, let and rented his land for three years to B. to be surrendered up by B. at the end of the term. A. was to furnish all the teams necessary, and the first year all the seeds and farming utensils, and for the rest of the time half the seeds, and B. for his care of the place, &c., was to have one-half of the products of the land. B. went away, leaving his agents in possession, and upon his return, during the continuance of the lease, A. prevented him from taking possession of the land. B. brought an action of forcible entry and detainer against A. *Held,* that by this agreement, B. was the tenant of A., and that they were tenants in common of the crops; that, there being no evidence of abandonment or surrender, B. was entitled to the possession of the land.

3. *Forcible entry and detainer—Recoupment.*—In an action of forcible entry and detainer, the defendant cannot set up a breach of the contract of letting by way of recoupment.

*Appeal from St. Charles Circuit Court.*

*Theodore Bruere and King & McDearmon,* for Appellant.

I. A contract of this kind is not regarded as a lease, but more in the nature of payment for services rendered by a part of the crops raised. In order to constitute a lease, the occupant must have an interest in the soil and freehold. (Maverick vs. Lewis, 3 McCord, 211; Fry vs. Jones, 2 Rawle, 11; Adams vs. Mikesson, 53 Penn. St., 81.)

II. The letting of lands upon shares for a single crop, or for successive crops, is no lease of the land, and the owner alone must bring trespass for breaking the close. (Bradish vs. Schenck, 8 Johns., 151; Putnam vs. Wise, 1 Hill, 234; Chandler vs. Thurston, 10 Pick., 205; Hare vs. Celey, 1 Cro., (Eliz.,) 143; Moulton vs. Robinson, 7 Foster, 550; Aiken vs. Smith, 21 Ver., 172.)

III. If the agreement be for a division of the specific crops, the owner of the land and occupant are to be regarded as ten-

ants in common of the crops, and although called a rent, it is in fact saying, that the occupants shall work the farm for so long, and divide the profits with the owner. (Putnam vs. Wise, 1 Hill, 234; Chandler vs. Thurston, 10 Pick., 205; Dinehart vs. Wilson, 15 Barb., 595; Atwood vs. Ruckman, 21 Ill., 200; Daniels vs. Brown, 34 N. H., 454; Esdon vs. Colburn, 28 Ver., 631.)

IV. Such a lease is not a demise of the premises. (1 Washb. Real Prop., 497; Williams vs. Nolen, 34 Ala., 167; Hurd vs. Darling, 14 Ver., 214; Aiken vs. Smith, 21 Ver., 172; Lowe vs. Miller, 3 Gratt., 205; Ferrall vs. Kent, 4 Gill., 209; Moore vs. Spruill, 13 Ired., 55; Smyth vs. Fankersley, 20 Ala., 212; Tripp vs. Riley, 15 Barb., 333; Otis vs. Thompson, Hill & D., 131; Wall vs. Preston, 25 Cal., 59; Guest vs. Opedyke, 30 N. J. Law, 554; Bernal vs. Hovious, 17 Cal., 546; Fiquet vs. Allison, 12 Mich., 330; Currey vs. Davis, 1 Houst., 598; Tanner vs. Hills, 44 Barb., 428.)

*B. B. Kingsbury*, for Respondent.

I. The agreement was to pay a certain part of the crops as rent, and to hold the land with the usual privileges of exclusive enjoyment. (Tayl. Land & Ten., (Ed. 1860,) 15; Jackson vs. Brownell, 1 Johns., 267.)

II. This was not the case of working land for a share in the crop. The lease gave respondent an absolute right of possession for three years.

III. The cases cited by appellant are believed to be all of them on questions arising as to ownership of crops.

IV. The fact of joint tenancy in crop does not rebut the fact of relation of landlord and tenant. (Ferrall vs. Kent, 4 Gill., 209; Walls vs. Preston, 25 Cal., 59.)

V. The evidence by way of recoupment or set-off was properly rejected. (Robinson vs. Walker, 50 Mo., 19.)

ADAMS, Judge, delivered the opinion of the court.

This was an action of forcible detainer for a farm situated in St. Charles county.

The suit originated in St. Charles county, and was taken by

change of venue to Warren county, and resulted in a verdict and judgment for the plaintiff, from which the defendant has appealed to this court.

The plaintiff claimed possession of the farm by virtue of a written agreement entered into between him and the defendant. He had gone into the possession under this agreement, or rather was already there at the date of the agreement, and cultivated the farm about two years. His family did not reside on the farm, but he had possession of one of the tenements, in which he kept a woman and a boy some thirteen years old. In the Fall of 1869, he removed with his family, leaving the woman and boy in possession of the tenement aforesaid, and in February, 1870, he went back to work on the farm as he had previously done, when the defendant forcibly prevented him from taking possession of the farm; and thereupon the plaintiff commenced this action for the possession.

The material question is, whether the agreement between the parties was a lease, whereby the possession of the farm was transferred to the plaintiff, or simply an agreement by which the plaintiff was hired to cultivate the farm on shares, the defendant all the time holding the possession exclusively for himself. The agreement referred to reads as follows: "This agreement, made and entered into this 20th day of June, eighteen hundred and sixty eight, by and between John Hoffman, Senior, party of the first part, and Wiley Johnson, party of the second part, both of the county of St. Charles, State of Missouri: Witnesseth, that the said John Hoffman, Sr., party of the first part, by these presents leases, rents and lets unto, said Wiley Johnson, party of the second part, for the term of three years, his farm known as the John Hoffman farm, about one mile south of Cottleville in the county of St. Charles, State of Missouri, commencing on the first day of March, eighteen hundred and sixty eight, and ending on the first day of March, eighteen hundred and seventy one, at the following terms and rates: First—The said Wiley Johnson, party of the second part, hereby agrees and binds himself to keep said place and fences in good farm-like order and repair,

for one-half of all grains, fruits and vegetables, and in all whatever may or will be raised on said farm for said three years. Second—Said John Hoffman, Sr., party of the first part, hereby agrees and binds himself to find all the necessary teams to cultivate and work said farm, and also to find the first year all the seeds and farming utensils, and for the balance of the two years, to find one-half of all seeds that may be raised on said farm. Third—Said John Hoffman further agrees and binds himself to pay one-half of all the dredging expenses, which may accrue from dredging of all grains sowed on said farm. Fourth—Said Wiley Johnson on his part further agrees to give up possession of said place and all the buildings thereupon, from the first day of March, eighteen hundred and seventy-one, at the request of said Hoffman. In testimony whereof, we have hereunto set our hands and affixed our seals, the day and year first above written.

JOHN HOFFMAN,

his

WILEY X JOHNSON

mark

Attested by Albert Demor."

This agreement, although dated in June, 1868, contemplates a letting from the first day of the previous March. The parties may have had the same verbal understanding between themselves which was not reduced to writing till June, 1868. Contracts of this character, although unknown in England, are frequent in the United States. The authorities, however, are conflicting in the several States, as to whether they create the relation of landlord and tenant, or simply make them croppers on the shares. In my judgment no definite rule can be laid down on this subject. Each case must be determined by the words of the written agreement between the parties. It is obvious from the language of this agreement, that the plaintiff was to have the possession of the farm, for the length of time indicated therein. The crops however, were to be divided between the parties. They were therefore tenants in common of the products of the farm, with the

possession of the land in the plaintiff as tenant of the defendant as his landlord. This seems to be the plain meaning of the agreement. The words are, that the defendant "leases, rents and lets" to the plaintiff his farm, &c., and at the end of the time the plaintiff is to "give up possession of said place and all the buildings, &c.," to the defendant. How could the plaintiff "give up" or surrender possession, if he was not in possession ; and how could the defendant receive from the plaintiff possession, if he was already in the exclusive possession ?

If the relation of landlord and tenant could be created at all under such a lease, it existed here. (See 1 Washb. Real Prop., 497; Moulton vs. Robinson, 7 Foster, (27 N. H.,) 550.) The plaintiff by this agreement was properly a tenant, having as against the defendant his landlord, as well as others, the possession of the land, and the rights growing out of that relation. The rights of the defendant in the crops, as tenant in common, were not inconsistent with their relations as landlord and tenant. Whether plaintiff was entitled to the possession of the place or not, the defendant was entitled to the possession of his share of the crops.

There appears to be nothing else in the record worthy of consideration. The evidence did not show an abandonment or surrender of the place by the plaintiff to the defendant.

From this record we cannot see, whether the questions propounded to the plaintiff on the subject of abandonment should have been answered or not. The bill of exceptions does not show what the answer would have been, or that it would have been material.

There is nothing in the point, that the defendant was not allowed to set up damages to himself growing out of the contract by way of recoupment. That cannot be done in actions of forcible entry and detainer.

The defendant still has his remedy for such damages, if any, by an action on the contract.

Let the judgment be affirmed. The other Judges concur.