## PERRETTE v. KANSAS CITY, Appellant.

### Division Two, April 23, 1901.

1. **Pedestrian:** SIDEWALK: KNOWLEDGE: PRESUMPTION. A pedestrian who knew of the unsafe condition of the sidewalk where he was injured, had no right to presume that it was reasonably safe for the use of the public. But where plaintiff testified that he knew in a general way the condition of the sidewalk in front of the lot, that is, that it was "in a pretty bad shape," but that he did not "know it was so bad" at the point where he was injured, that it appeared all right around the water plug, and that he did not know anything to the contrary until he stepped on the plank at that point, and went

Perrette v. Kansas City.

down into the excavation thereunder, it is not error to instruct the jury that he had the right to presume that the walk at the point where the injury occurred was in a reasonably safe condition.

2. ———: ———: ORDINARY CARE: INSTRUCTION. The omission of a requirement for ordinary care from plaintiff's instructions, may be supplied by those given for defendant.

3. ———: ———: LOOKING FOR DEFECT. The law does not impose on a pedestrian the duty of looking for defects in a sidewalk. In the absence of knowledge of its dangerous condition, the pedestrian has a right to presume that the sidewalk is reasonably safe for travel, and hence he is not barred from recovering for injuries due to defects therein because he did not use ordinary care in discovering such defects.

4. ———: ———: ORDINARILY CAREFUL. The instruction concluded with these words: "Unless you find that the defect of which plaintiff knew, if any, was such a defect as to render the walk necessarily dangerous to a *person ordinarily careful*." The defendant city claims that it should have ended with the words, "a prudent person ordinarily careful." *Held,* that the objection is quite technical, and as the omission of the word "prudent" could not have misled the jury, judgment will not be reversed on that account. (Refusing to follow Cohn v. City of Kansas, 108 Mo. 392, on authority of section 865, R. S. 1899.)

5. Judgment: PHYSICIAN'S SERVICES: REMITTITUR. A remittitur of all fees claimed for physician's services, after verdict and judgment, cures all error in an instruction telling the jury to take such services into account in estimating plaintiff's damages.

6. ———: EXCESSIVE VERDICT. If the verdict, in view of all the evidence, is not so out of line with reason and justice as to shock the conscience, or to satisfy the unbiased mind that it was not the result of impartial and unprejudiced deliberation, the appellate court will not reverse it as being excessive.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*R. B. Middlebrook* for appellant.

(1)  Instruction 1, given by the court at the instance of the plaintiff, in view of the plaintiff's testimony, is erroneous. In its present form, it enables the plaintiff to avail himself of a presumption contrary to what he swears he knew.  Nixon v. Railroad, 141 Mo. 439; Brannock v. Elmore, 144 Mo. 65; Roddy v. Railroad, 104 Mo. 150.  (2)  The court erred in refusing to give instruction 6, offered by the defendant.  Spillane v. Railroad, 135 Mo. 427; Henderson v. Railroad, 61 N. Y. 900; Murray v. Railroad, 101 Mo. 236; Kelley v. Railroad, 101 Mo. 67; Packet Co. v. Vandergrift, 34 Mo. 55; Callahan v. Warne, 40 Mo. 131; Corcoran v. Railroad, 105 Mo. 399; Dougherty v. Railroad, 97 Mo. 647; 7 Am. and Eng. Ency. of Law (2 Ed.), p. 371.  (3)  The court erred in sustaining the objection of plaintiff's counsel to the question, "I will ask you if the habit of drinking constantly has a tendency to decrease the expectancy," asked by defendant of the plaintiff's witness Park.  The plaintiff had testified that he was in the habit of drinking regularly, but not to excess, and the question of the city's counsel was certainly relevant, and the objection to the question ought not to have been sustained by the court.  (4)  The court erred in giving instruction 4 on behalf of the plaintiff, by means of which instruction the defendant was precluded from utilizing in any way the knowledge of the plaintiff acquired by him before the inquiry, that the sidewalk at the place in question was "in pretty bad shape all the time." Cohn v. Kansas City, 108 Mo. 392.  (5)  If the defect complained of by the plaintiff was so extremely latent as the witnesses for plaintiff testified it was, then the city was not liable under the law, as settled by this court.  In any event, the court should have given instruction 7, asked by defendant.  Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317.

*Ward & Hadley* and *Gilmore & Brown* for respondent.

(1)   The theory of the plaintiff's case was that on the west side of the water plug in the sidewalk in front of the Hageman flats was a piece of one of the boards of the walk extending from the western edge of the walk up to an inch or two of the plug; that this piece rested loose and unnailed on the outside or western stringer of the walk so that it would give way or tip down when stepped upon between the plug and the stringer; that this condition was one not apparent on a casual observation such as one walking along the walk would make, presenting when the board was in place "an appearance of security;" that plaintiff did not know that the board west of the plug was loose, but from such observation as he had made "it was all right as it appeared;" that when he was walking along the sidewalk on the afternoon of August 26, he stepped upon this loose board between the water plug and the outside stringer; that the board went down with him and he was injured, as claimed in his petition.   The theory of the defense was that the plaintiff was not injured at the place claimed in the plaintiff's petition, and in fact was not injured on Holly street, and that the defect claimed in the petition, viz., the loose board west of the plug, did not exist on August 26, or at any time prior thereto.   These were the two questions of fact submitted to the jury by the evidence of the defendant and the argument of counsel.   Both of these questions were decided adversely to appellant by the jury.   Skinner v. Stifel, 55 Mo. App. 9; Culverson v. City of Maryville, 67 Mo. App. 343; Roe v. Kansas City, 100 Mo. 190; Franke v. St. Louis, 110 Mo. 516.   (2)   Assuming, for the purpose of argument, that respondent knew of the particular defect complained of, such knowledge has, by an unbroken line of authorities in the State, been held to constitute no bar to an action based upon an injury caused by such defect.   Maus v. Springfield, 101 Mo. 613;

Vol 162 mo—16

Gerdes v. Arch Co., 124 Mo. 347; Chilton v. St. Joseph, 143 Mo. 192. (3) Instruction 4, on behalf of respondent, has been frequently approved by this court, and is a correct declaration of the law. Maus v. Springfield, supra; Flynn v. Neosho, 114 Mo. 567; Chilton v. St. Joseph, supra; Culverson v. Maryville, 67 Mo. App. 343. An insignificant verbal inaccuracy as to "the care of a person ordinarily careful," as distinguished from the "care of a prudent person ordinarily careful," was fully cured by appellant's most favorable instructions 4 and 5 on contributory negligence and the obligations therein set forth, placing upon respondent the obligation to exercise ordinary care and prudence and such care and caution as an ordinarily prudent person under the circumstances would have exercised. Deweese v. Meramec Iron Min. Co., 128 Mo. 423; Dickson v. Railroad, 104 Mo. 491; Shortel v. St. Joseph, 104 Mo. 114; Harrington v. Sedalia, 98 Mo. 583. (4) Appellant complains because its instruction number 7 was not given. This instruction was misleading and erroneous, because it told the jury that if the condition of the sidewalk would not be observed by the city authorities in the exercise of ordinary care, then the plaintiff could not recover. Observation is not inspection. It is the duty of city authorities charged with the inspection of sidewalks to use ordinary care in their inspection, not simply to observe them as might an ordinary pedestrian. Barr v. Kansas City, 105 Mo. 550; Carrington v. St. Louis, 89 Mo. 208; Squires v. Chillicothe, 89 Mo. 226.

BURGESS, J.—This is an action by plaintiff for ten thousand dollars damages for personal injuries sustained by him by reason of the alleged negligence of defendant in failing to keep its sidewalk in front of 1809 Holly street, in said city, in a reasonably safe condition for pedestrians, in consequence of which he caught his foot in a hole therein, and was injured.

The injury occurred about four o'clock in the afternoon of August 26, 1896, while plaintiff was returning to his home from a business errand. He lived at that time, and had, for about four months prior thereto, at 1847 Holly street, which runs north and south.

The sidewalk was made of boards. An iron pipe, connected with the waterworks plant of defendant city, stood near the middle of this walk in front of 1809 on said street, the top of the pipe standing a little above the level of the walk. Around this iron pipe there was a small excavation about a foot deep, over which the boards of the walk were so laid as to leave an open space of about three and one-half inches between the end of the board on the west side of said pipe, which was loose at its outer and western end, and so insecurely nailed down that when stepped upon at the end next to the pipe it would drop down into the excavation around the pipe. While plaintiff was walking along on the sidewalk at the time of the accident he stepped with his right foot on the loose plank just to the west of the water plug, the plank went down with him, his foot was caught in the hole, and he was thrown down upon the walk, his leg broken, the ligaments of his foot and ankle sprained and lacerated, and the bones of his foot and ankle dislocated. Bandages and splints were first applied, the swelling being so great that a plaster of Paris cast could not be put on. The inflammation around the injured parts became so great in a few days that gangrene set in and plaintiff was compelled to keep his foot in ice water four or five days, during which time he suffered intense pain, and was unable to secure any sleep except under the influence of opiates. A plaster of Paris cast was afterwards applied, which remained on about forty days, and plaintiff was altogether confined to his bed ninety days, suffering constant pain and inability to sleep, the first time that he left his home after the injury being

when, with the aid of crutches and an attendant, he got to a buggy and was driven to the place of registration to register for the fall election.

At the time of the injury plaintiff was conducting a machine shop in Kansas City, being one of the four die-makers in the city. Since opening a shop of his own his average earnings had been about twenty-one dollars a week. From the time of his injury up to the time of the trial, nearly fourteen months, he had not been able to make anything, as the condition of his foot and ankle had been such that he could not stand, and in working at his trade it was necessary for him to stand on his feet. The reason of this result seems to have been, according to the testimony of the physicians, largely due to the tearing loose of the ligaments and to the displacing of the heel bone where it unites with the bones of the foot. This had caused the axis of the foot and ankle to become perverted, the ankle to give way or turn out, and the arch of the foot to be destroyed, making the foot a "flat-foot." According to the testimony of the three physicians who treated and examined the plaintiff this condition was a permanent one.

At the time plaintiff was injured he was forty-nine years old, and had always been a strong man.

At the instance of plaintiff and over the objection and exception of defendant, the court instructed the jury as follows:

"1. The court instructs the jury that it was the duty of defendant, Kansas City, to keep the sidewalk on the east side of Holly street, between Eighteenth and Nineteenth streets of said city, in a condition reasonably safe for the use of the public, and the plaintiff had the right to presume that this duty had been performed.

"2. The court instructs the jury that if you find from the evidence that the sidewalk on the east side of Holly street,

between Eighteenth and Nineteenth streets, and in front of the building known as 1809-1813, Holly street, of said Kansas City, was on the twenty-sixth day of August, 1896, in an unsafe and dangerous condition for travel thereon by the public, and that a sufficient time had elapsed between the time said sidewalk became defective, in case you find it was defective, and the time of the injury to plaintiff, for the city, by the exercise of reasonable diligence, to have discovered and repaired said sidewalk prior to the time of the accident, and if you find that the plaintiff, while lawfully travelling along said sidewalk, in the exercise of ordinary care, was thrown and injured by reason of the unsafe and dangerous condition of said sidewalk, then your verdict will be for the plaintiff.

"3. The court instructs the jury that the plaintiff is not bound to prove that any officer or agent of the defendant, Kansas City, had actual notice of the condition of the sidewalk in question, but, if you find from the evidence, that said sidewalk was unsafe and defective, and that the plaintiff was injured by reason of such unsafe and defective condition of said sidewalk, and that a sufficient length of time had elapsed between the time when said sidewalk became defective and the date of the injury to plaintiff for the city, by the exercise of reasonable diligence, to have discovered and repaired the defect in said sidewalk, then the city was negligent in not discovering and repairing said sidewalk.

"4. The court instructs the jury that if you find, as a fact, that the plaintiff knew that the sidewalk at the point where he alleges he fell and was injured was out of repair and in bad condition, you may take that fact into consideration in determining whether or not plaintiff was negligent; but such knowledge will not be a defense in this action, unless you find that the defect of which the plaintiff knew, if any, was such a de-

fect as to render the walk necessarily dangerous to a person ordinarily careful.

"5.    The court instructs the jury that if you find for the plaintiff, you will assess his damages at such a sum, not exceeding ten thousand dollars, as will be a fair and just recompense for the injury received by him.    In fixing the amount of such damages, you will take into consideration the loss of earning capacity of plaintiff, his expenses for medical service and attendance, the nature and extent of physical injuries received, the bodily pain and mental anguish endured, and any and all such damages, as it appears from the evidence will reasonably result from said injuries in the future."

The defendant asked the court to instruct the jury as follows:

"1.    The court instructs the jury that under the pleadings and evidence in this case, your verdict should be for the defendant.

"2.    On behalf of the defendant, Kansas City, the court instructs the jury as follows:    In this action the plaintiff seeks to recover damages from the defendant city, for injuries which plaintiff alleges in his petition, were received by him on August 26, 1896, by falling on a defective sidewalk in front of the building known as No. 1809, Holly street, in this city. The burden of proof in this case devolves upon the plaintiff, and before you can return a verdict in his behalf, you must find by a preponderance of the evidence, that is, by the greater weight of the credible testimony, the following facts: *First,* that the plaintiff was injured by reason of falling upon a defective sidewalk at the place alleged in the petition.    *Second,* you must further find that the defect which caused the injury was such an one as made the sidewalk not in a reasonably safe condition for travel upon it.    *Third,* you must also find that the defect was one, that by the exercise of ordinary care, could

have been discovered by the city officials, charged with the supervision of sidewalks. If you find that the defect was a hidden or latent one, so that by the exercise of ordinary care and diligence on the part of said city officials, it could not have been discovered, then the plaintiff càn not recover. *Fourth,* you must also find that the defect had existed for such a length of time that said city officials would have discovered it, and would have had a reasonable time to repair it before the injury occurred, if they had used ordinary care and diligence in the discharge of their duties.

"3. The court instructs the jury that the city is not an insurer of those who walk upon its sidewalks. In other words, because a person is injured by a fall, caused by a defect in the sidewalk, it does not necessarily follow that such person is entitled to recover damages from the city. Such person can only recover when the city has been negligent, as defined in instruction numbered 2.

"4. The court instructs the jury that if you find that at the time the injury was received, the plaintiff was not exercising such care and caution as an ordinarily prudent person, under the circumstances, would have exercised in walking along the sidewalk, then the plaintiff can not recover.

"5. At the instance of the defendant, Kansas City, the court instructs the jury that they can not find for the plaintiff in this cause, unless they believe from the evidence, that at the time August Perrette, the plaintiff, was injured, he was using ordinary care and prudence. And in examining into the question, as to whether or not he was exercising ordinary care and prudence at the time and place of his injury, you must take into consideration all the facts and circumstances as shown by the evidence, tending to shed any light on the kind of care used by him at the time of his alleged injury; and, if you believe, from the evidence, that he was not using ordinary care

and prudence to avoid injury, then your verdict must be for Kansas City.

"6. If the jury believe, from the evidence, that Kansas City failed to use ordinary care in keeping the sidewalk in reasonably safe condition, and that the plaintiff, Perrette, also failed to use ordinary care in not discovering the condition of the sidewalk, by reason of which failures he was hurt, then the jury must find for the city.

"7. At the instance of the defendant, Kansas City, the court instructs the jury that, if they believe from the evidence, that there was a plank in a defective condition on the east side of Holly street, between Seventeenth and Eighteenth streets, and that said defect consisted in the plank being in a teetering condition, so that it would tip up and immediately resume its former position, after a person stepping on it had taken his foot off, that this condition of the plank was such that its condition would not be observed by the city authorities when in the exercise of ordinary care, and that the plaintiff was injured by stepping on the plank when it was in this condition, then, even though the jury may believe, from the evidence, that the plaintiff was injured because of his having stepped on such plank, yet your verdict must be for the defendant, Kansas City."

Of the instructions asked by defendant, all except the first, sixth and seventh were given, and to the refusal to give these, defendant duly excepted.

The trial resulted in a verdict and judgment for plaintiff for five thousand dollars.

In due time defendant presented its motions for new trial and in arrest, which being overruled it appeals.

The first instruction given on the part of plaintiff is criticised, upon the ground that it told the jury that plaintiff had the right to presume that the sidewalk, where the alleged acci-

dent occurred, was in a condition reasonably safe for the use of the public; in the face of the fact that the plaintiff himself swore positively that he passed over the walk twice a day, morning and evening, at the place in question, and that it was "in pretty bad shape all the time." If plaintiff knew of the unsafe condition of the sidewalk at the point where the accident occurred, he had no right to presume that it was in a condition reasonably safe for the use of the public. [Brannock v. Elmore, 114 Mo. 55; Nixon v. H. & St. J. R. R., 141 Mo. 425.] This would be the indulgence of a presumption over an absolute fact and illogical. But plaintiff testified to the condition of the sidewalk in front of said lot 1809 in a general way, that is, that it was in "pretty bad shape," but that he did not "know it was so bad," as it was at the point at which he was injured; that it appeared all right around the water plug, and that he did not know anything to the contrary until he stepped upon the end of the plank at that point and it went down with him, and that he had never seen the hole before, and we are of the opinion that under such circumstances the instruction was not erroneous upon that ground. [Roe v. Kansas City, 100 Mo. 190; Skinner v. Stifel, 55 Mo. App. 9; Culverson v. City of Maryville, 67 Mo. App. 343.]

It is also urged against this instruction that before according plaintiff the right to presume that the sidewalk was in a reasonably safe condition for travel, it should have required of him the exercise of ordinary care, and prudence at the time of the accident, but when this instruction is read in connection with plaintiff's second, it will be found that the exercise of ordinary care by plaintiff, while walking along upon the street at the time of the accident, was made a condition to his recovery, and the jury must have found that he was in the exercise of such care, otherwise they could but have found for defendant. It was not necessary that both propositions be contained

in the same instruction.

It is asserted that the action of the court in refusing the sixth instruction asked by defendant was reversible error.    The argument is, that although defendant may have been guilty of negligence in failing to keep its sidewalk where the accident occurred in a reasonably safe condition for travel, yet, if plaintiff failed to use ordinary care in discovering the condition of the sidewalk, and by reason of such failure he was hurt, he was not entitled to recover.    The law, however, did not impose upon plaintiff the duty of looking for defects in the sidewalk, which in the absence of knowledge of its dangerous condition, he had the right to assume was reasonably safe for travel; hence no error was committed in refusing this instruction.

During the trial one S. R. Park testified in behalf of plaintiff, with reference to his life expectancy, which he stated was 21.6 years.    Plaintiff had testified that he was a drinking man, but never got drunk, and was not a regular drinker.    And this witness upon his cross-examination was asked by defendant, if the habit of drinking constantly, had a tendency to decrease the expectancy.    Upon objection of plaintiff the witness was not permitted to answer the question, and defendant insists that this was error.    There was no evidence whatever upon which to predicate such a question.    The witness did not state that he was a regular drinker, upon the contrary he stated that he was not, and there was no other evidence upon the subject.    Moreover, it was not shown that the witness was qualified to testify as an expert in regard to the matter.

Defendant claims that the first instruction asked by it and refused, should have been given, and while conceding that the knowledge by plaintiff of the defective condition of the sidewalk would not of itself ordinarily constitute negligence as a matter of law, and that there were other elements of negligence plainly appearing, namely, that the accident occurred about four

o'clock on the evening of a bright sunny day, and a total absence of any confusing or distracting occurrences calculated to throw plaintiff off his guard and prevent him from exercising the knowledge he possessed of the defective condition of the walk, yet these matters were necessarily considered by the jury in passing upon the question as to whether or not plaintiff was exercising such care and caution as an ordinarily prudent person, under the circumstances, would have exercised in walking along the sidewalk, and the effect of their verdict was that he was in the exercise of such care.

It is also insisted that error was committed in giving the fourth instruction on the part of plaintiff. The argument is that by this instruction defendant was precluded from utilizing before the jury in any way the knowledge acquired by plaintiff that the sidewalk at the place in question was "in pretty bad shape all the time," but this contention seems to us to be untenable, for how it could have the effect that defendant contends it had, we are unable to conceive.

It is further claimed that this instruction is vicious, in that it concludes with the words, "unless you find that the defect of which the plaintiff knew, if any, was such a defect as to render the walk necessarily dangerous to a *person ordinarily careful,*" when it should have described a "prudent person ordinarily careful."

The case of Cohn v. The City of Kansas, 108 Mo. 392, was an action against the city for personal injuries sustained by reason of a defective sidewalk, and the court in the instructions given at the request of the plaintiff, told the jury that the fact that plaintiff knew the condition of the street would not prevent a recovery, "if she used such care in attempting to pass along said street as persons ordinarily use under such circumstances." And in another instruction, given at the instance of the plaintiff, the court said, "Ordinary care is just

such care as a person should ordinarily exercise under like circumstances." The court said, "The court erred in both of these definitions; for ordinary care is that care which a prudent person ordinarily uses under like circumstances, which is another and different thing from such care as persons ordinarily use under like circumstances." But the case was not reversed upon that ground, nor are we inclined to reverse the judgment in the case in hand because of an error which, to say the most for it, is quite technical, and could not in any way have misled the jury or prejudiced the rights of defendant. [R. S. 1899, sec. 865.]

Dr. George Goodman, a physician who treated plaintiff for his injuries, was a witness in his behalf, and stated that his charge therefor was $250, but did not testify as to its reasonableness and, this being the case, defendant contends that the jury had no right to take into consideration this item in making their verdict, and, therefore, so much of instruction number five given at plaintiff's request as authorized the jury to take into consideration the plaintiff's expenses for medical service and attendance, is erroneous, there being no testimony upon which to base it. A complete answer to this contention is in the fact that the record shows that after the verdict and judgment were rendered plaintiff remitted from the judgment "the sum of $250, the same being the amount testified to as fees for the services of physicians and surgeons attending the plaintiff." By this remittitur nothing is left as a basis for this contention.

A still further contention is that the court erred in refusing the seventh instruction asked by defendant, for if, as claimed, the defect complained of was so extremely latent as the witnesses for the plaintiff (aside from himself) testified it was, then the city was not liable. With respect to this contention it is sufficient to say that this identical question was presented

to the jury by the third paragraph of defendant's second instruction by which the jury were told that in order to entitle plaintiff to recover, "you must also find that the defect was one that, by the exercise of ordinary care, could have been discovered by the city officials, charged with the supervision of sidewalks. If you find that the defect was a hidden or latent one, so that by the exercise of ordinary care and diligence on the part of said city officials, it could not have been discovered, then the plaintiff can not recover." It follows that the instruction was properly refused.

A final contention is that the verdict was excessive. That it is large is true, but when the pain and suffering which plaintiff underwent, that his injuries are in all probability permanent, and the loss of time occasioned by his injury are considered, the verdict is not so out of line with reason and justice as to shock the conscience, and to satisfy the unbiased mind that it was not the result of impartial and unprejudiced deliberation, and under such circumstances this court will not interfere. [Hollenbeck v. Mo. Pac. R. R. Co., 141 Mo. 97.]

The judgment is affirmed.

*Sherwood P. J.*, and *Gantt, J.*, concur.